UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DEANDRA PITTMAN | CIVIL ACTION |
| VERSUS | No.: 17-9104 |
| SWAN RIVER, LLC | SECTION: "J" (3) |

## ORDER & REASONS

Before the Court is a *Motion for Summary Judgment* **(Rec. Doc. 31)** filed by Defendant, Swan River LLC ("Swan River"), an opposition thereto (Rec. Doc. 33) filed by Plaintiff, Deandra Pittman ("Plaintiff"), and a reply (Rec. Doc. 38) by Swan River. Having considered the motions and legal memoranda, the record, and the applicable law, the Court finds that Swan River's motion for summary judgment should be **GRANTED**.

## FACTS AND PROCEDURAL BACKGROUND

The instant litigation arises out of Plaintiff's lease dispute with Swan River. Swan River operates facilities in New Orleans in which it leases space to small business owners.[1] Plaintiff was a lessee at one of Swan River's facilities, located at 2940 Canal Street ("the Facility"). Plaintiff entered into a year-long lease with Swan River on February 22, 2012. The lease contained no automatic renewal provisions. (Rec. Doc. 33-2). Upon the expiration of that lease, Plaintiff continued to operate her business out of the Facility with the permission of Swan River. Thus, on February 23, 2013 Plaintiff's lease became a reconducted lease and operated as such for the next 29 months. *See* La. Civ. Code. Art. 2721.

On July 22, 2015, Alexandra Porteous ("Porteous"), a member and manager of Swan River, alerted Plaintiff via email that Swan River was going to be executing

---
[1] Many of the small business owners specialize in relaxation or medicinal techniques such as yoga and massage.

new leases beginning on September 1, 2015 and invited her to enter into one. (Rec. Doc. 31-5). Accompanying Swan River's offer to lease was a requirement that Plaintiff sign a "key agreement"[2] and promise not to have any employees. Porteous told Plaintiff these restrictions were due to security concerns and were being required of all potential lessees. (Rec. Doc. 31-5). After several emails back and forth, it became clear Plaintiff believed Swan River was only imposing these new restrictions because Plaintiff had hired an African-American employee named Mark Percy ("Percy"). Plaintiff alleged there was never an issue with her hiring employees and giving out keys before she hired Percy. *Id*.

Porteous assured Plaintiff this was not the case, and that all lessees were required to sign a new lease and to abide by the restrictions. On July 31, 2015, Plaintiff wrote, "I will not be renewing a lease under your newfound conditions. Rent will be paid before the 3rd of the month as usual and I will evacuate the premises under duress by September 1, 2015." (Rec. Doc. 31-5).

On August 30th, 2016, Plaintiff filed the instant action in New Orleans First City Court. As service was not accomplished until August 30th, 2017, Swan River timely removed the case to this Court on September 15th, 2017. Plaintiff's original state court petition alleged general violations of federal and state anti-discrimination law, as well as a state law claim for constructive eviction. On August 13, 2018, the Court ordered Plaintiff to amend her complaint to state with more precision the federal laws she states a claim under. (Rec. Doc. 15).[3] Plaintiff's Amended Complaint, filed on August 28, 2018, asked for relief under the Fourteenth Amendment, Title VII, and 42 U.S.C. § 1981. (Rec. Doc. 17).

On April 9, 2019, the Court issued an Order and Reasons (Rec. Doc. 24) granting Swan River's Motion to Dismiss Plaintiff's Amended Complaint (Rec. Doc. 18). The Court dismissed Plaintiff's Title VII and Fourteenth Amendment claims in their entirety, but gave Plaintiff leave to file a Second Amended Complaint

---

[2] A "key agreement" is essentially a promise by the lessee not to make extra copies of the key and give it to unauthorized persons. (Rec. Doc. 31-6).
[3] The basis for this Court's jurisdiction is federal question. (Rec. Doc. 1-2).

supporting her claim for relief under 42 U.S.C. § 1981. Plaintiff filed her Second Amended Complaint on April 18, 2019, and it is that Second Amended Complaint that is the subject of Swan River's present Motion for Summary Judgment.

Swan River argues it is entitled to summary judgment on Plaintiff's Section 1981 claims for two reasons. First, it argues Plaintiff's Section 1981 claims are barred by the relevant statute of limitations. In the alternative, Swan River maintains that the evidence in the record does not support Plaintiff's intentional discrimination claims under Section 1981.

## **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not

3

persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See*, *e.g.*, *id.* at 325; *Little*, 37 F.3d at 1075.

## **DISCUSSION**

### I. WHETHER PLAINTIFF'S 1981 CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

The rule for statute of limitations in Section 1981 is relatively straight forward in theory, but slightly more difficult in application. If the plaintiff is suing for conduct that occurs after contract formation, such as harassment or termination, then the plaintiff is entitled to the general federal statute of limitations period of four years. *Johnson v. Crown Enterprises, Inc.*, 398 F.3d 339, 341 (5th. Cir. 2005). If, however, the gravamen of the plaintiff's claim is defendant's failure to enter into a new contract with her, then the relevant state personal injury statute of limitations will apply. *Id.* Here, "that would be Louisiana's one-year prescriptive period for tort actions." *Id.* (citing *Taylor v. Bunge Corp.*, 775 F.2d 617, 618 (5th. Cir. 1985)).

Characterizing a plaintiff's claim as termination of an old contract or failure to enter into a new one can be a rather knotty determination in cases where the plaintiff and defendant engage in multiple, repetitive contracts. Thus, in the present action Plaintiff argues that the four-year statute of limitations applies because Plaintiff and Swan River had an existing lease when the events giving rise to her claim took place. Conversely, Swan River urges the Court to apply the one-year prescriptive period because the gravamen of Plaintiff's complaint is the restrictive terms of the new lease.

4

In Louisiana, "legal reconduction takes place when a fixed-term lease expires and the lessee without opposition continues to occupy the premises for more than a week. The reconducted lease is actually a continuation of the lease under the same terms and conditions except that the duration in the old lease is voided." *Governor Claiborne Apartments, Inc. v. Attaldo*, 235 So. 2d. 574, 576 (La. 5/4/70); *see also* La. Civ. Code. Art. 2721. Once a lease has been reconducted, it is considered a lease with an indeterminate term. La. Civ. Code. Art. 2727. Yet, reconducted leases are often referred to as month-to-month, because either party has the power to terminate the lease with notice of at least ten days before the end of the month. *Attaldo,* 235 So.2d. 576.

It seems to the Court that under Louisiana lease law, Plaintiff's claim involves both a termination of her reconducted lease and a failure to enter a new lease on fair terms. In the instant case, however, the Court need not decide whether the one-year or four-year statute of limitations applies, because the Court finds for Swan River on alternate grounds.

**II. THE EVIDENCE IN THE RECORD IS INSUFFICIENT WITH RESPECT TO ESSENTIAL ELEMENTS OF PLAINTIFFS' CLAIM**

"To establish a § 1981 Claim for contractual discrimination, Plaintiffs must allege that (1) they are members of a racial minority; (2) Defendants intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute." *Body by Cook, Incorporated v. State Farm Mutual Automobile Insurance*, 869 F.3d 381, (5th. Cir. 2017). An analysis of a Section 1981 discrimination claim is identical to an analysis of a Title VII discrimination claim. *Jones v. Robinson Prop. Grp. L.P.*, 427 F.3d 987, 992 (5th Cir. 2005). Swan River does not dispute that Plaintiff, via her employee Percy, is a member of a racial minority, nor that the alleged claim concerns an activity protected by Section 1981—here the termination of Plaintiff's reconducted lease and the offer of a new lease with restrictions.

Rather, as is often the case in discrimination claims, the crux of Swan River's motion for summary judgment is that Plaintiff has failed to provide evidence of

intentional discrimination on the basis of race. A *prima facie* case for intentional discrimination usually requires the plaintiff to show that they were qualified to receive or enforce the contract, they either did not receive the contract or the contract was terminated, and "similarly situated individuals outside of [plaintiff's] protected class were treated more favorably." *Hall v. Continental Airlines, Inc.*, 252 F. Appx. 650 (5th. Cir. 2007). Only after Plaintiff establishes her *prima facie* case for intentional discrimination does the burden shift to Swan River to articulate a non-discriminatory reason for the more restrictive new lease. *Bodenheimer v. PPG Indus., Inc.,* 5 F.3d 955, 957 (5th Cir.1993).

Here, Plaintiff has failed to prove her *prima facie* case for race discrimination. The only evidence in the record supporting Plaintiff's claim is her affidavit and a copy of her original one-year lease with Swan River. (Rec. Doc. 33-2). This evidence supports a finding that Plaintiff was qualified to lease space from Swan River, and that Swan River's new restrictions adversely impacted her. Nonetheless, Plaintiff's case fails because she has "presented no evidence that similarly situated individuals outside of her protected class were treated more favorably." *Hall*, 252 F. Appx. 654; *see also Body by Cook, Incorporated*, 869 F.3d 388 (dismissing plaintiff's claims when plaintiff failed to identify "specific instances when [plaintiff] was refused a contract but a similarly situated non-minority owned body shop was given a contract."); *Crosby v. Kilgore*, 9 F.3d 104 (5th Cir. 1993) (holding that "although [plaintiffs] were treated poorly by [defendants] their treatment was not demonstrably different from that received by the white contractors….On these facts, there is no demonstrated discrimination and no basis for a section 1981 claim.").

As Plaintiff bears the burden of proof at trial, Swan River need only point out that the evidence in the record is insufficient to support Plaintiff's claim of intentional discrimination. *See Celotex*, 477 U.S. at 325. Nevertheless, despite it being unnecessary, the evidence proffered by Swan River in fact shows that Swan River was making all their lessees sign new leases with the same restrictions Plaintiff

6

complains of. (Rec. Doc. 31-3 and 31-5).[4] Thus, there can be no doubt that the record supports a grant of Swan River's motion for summary judgment.

### III. PLAINTIFFS' REMAINING STATE LAW CLAIMS

Plaintiff arguably has no remaining state law claims.[5] Under the law of this Circuit, an amended complaint supersedes all previous complaints and renders them of no legal effect "unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344 (5th. Cir. 1994). Plaintiff failed to reference her First Amended Complaint in the Second Amended Complaint. (Rec. Doc. 27). Plaintiff further failed to state any state law cause of action in the Second Amended Complaint. *Id.* Nevertheless, the Court is aware that Plaintiff's original complaint and First Amended Complaint stated causes of action under Louisiana law for "constructive eviction" and being "discriminatory," and the facts alleged by Plaintiff may in fact support claims under state law despite Plaintiff's failure to include the specific claims in her Second Amended complaint. (Rec. Doc. 1-1).

To the extent Plaintiff retains any state law claims, the Court finds it appropriate to remand those claims to state court. 28 U.S.C. § 1367; *see also Brookshire Bros. Holding, Inc. v. Dayco Products, Inc.,* 554 F.3d 595, 602 (5th. Cir, 2009). "The general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial." *Brookshire Bros. Holding, Inc.*, 554 F.3d 602. Although district courts occasionally retain jurisdiction of state law claims after the dismissal of all federal claims, those are cases where the district court has engaged in voluminous discovery and motion practice and has substantially engaged with the merits of the state law claims. *Id.* at 598 (holding the district court should retain jurisdiction because the litigation had generated more than 1,300 docket entries, the district court had decided forty-one dispositive motions and twenty-one discovery motions, and the trial date had been

---

[4] Respectively, these documents are the affidavit of Porteous and a copy of the email exchange between Porteous and Plaintiff.
[5] Indeed, Defendant only proffers substantive arguments on Plaintiff's Section 1981 claims because "[the second amended complaint] does not allege any state action." (Rec. Doc. 31).

continued four times); *see also Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th. Cir. 1996) (upholding a district court's retainment of jurisdiction in a case where over 300 pleadings had been filed and multiple summary judgments on state law claims were pending); *Newport Ltd. v. Sears, Roebuck and Co.,* 941 F.2d 302, 308 (5th Cir.1991) (upholding a district court's retainment of jurisdiction when the federal litigation had produced twenty-three volumes and thousands of pages of record and resulted in a pre-trial order exceeding two-hundred pages).

Here, the entire litigation has only produced thirty-nine docket entries. The Court has not decided a single discovery or pre-trial motion. After this Order and Reasons, the Court will have only decided two dispositive motions, both of which exclusively addressed issues of federal law. In fact, neither party has substantively briefed an issue of state law throughout the entire course of the litigation. Thus, the Court finds that in light of the dismissal of Plaintiff's federal claims, the case should be remanded to state court to determine the extent and validity of Plaintiff's remaining state law claims.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Swan River's *Motion for Summary Judgment* **(Rec. Doc. 31)** is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that to the extent Plaintiff has any remaining state law claims, those claims are hereby **REMANDED** to First City Court of New Orleans.

New Orleans, Louisiana this 5th day of November, 2019.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE